UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:09-CV-219-KKC

BITUMINOUS CASUALTY CORP.                                                                    PLAINTIFF

v.        **MEMORANDUM OPINION AND ORDER**

KENNEY, INC.                                                                                              DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion to Dismiss [Rec. No. 8] filed by Defendant Kenney, Inc. ("Kenney"). Kenney urges this Court to decline to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. For the reasons set forth below, the Court will grant Defendant's motion to dismiss and decline to exercise jurisdiction over the declaratory action.

**I.        FACTUAL BACKGROUND**

Plaintiff Bituminous Casualty Corporation ("Bituminous") has filed the instant Complaint against Kenney under the Declaratory Judgment Act, seeking a declaration of the parties' rights and obligations under various insurance policies issued by Bituminous to Kenney. (Rec. No. 1, Complaint, ¶6). The parties' rights and obligations under these policies were put at issue when Kenney was sued in Ohio state court. The Court will give a brief overview of the state court litigation before addressing the facts of the insurance coverage dispute.

In January 2004, Kenney was selected by the Jackson County Water Company ("JCWC") as general contractor for Division A-1 of JCWC's planned expansion of its water treatment and

distribution facilities in Jackson County, Ohio. (Rec. No. 1, Complaint, ¶7).[1] Kenney entered into a contract with JCWC for Division A-1 of the project on February 24, 2004. (Rec. No. 1, Complaint, ¶9).[2] Beginning in June 2005, JCWC alleged that problems began manifesting with the work being done on Division A-1. (Rec. No. 1, Complaint, ¶12). These problems included pipes breaking, cracking, rupturing and/or leaking, requiring their repair and replacement. (Rec. No. 1, Complaint, ¶12).

On May 7, 2008, JCWC filed suit in the Ohio Court of Common Pleas, Jackson County, captioned *Jackson County Water Company, Inc. v. Kenney, Inc., et al.*, (the "JCWC litigation"). (Rec. No. 1, Complaint, ¶20). The lawsuit arose out of the problems with the work done on Division A-1. (Rec. No. 1, Complaint, ¶21). In the JCWC litigation, claims are asserted against Kenney for breach of contract, breach of express warranty, unjust enrichment, negligence/failure to perform in a workmanlike manner and breach of agreement to extend an express warranty. (Rec. No. 1, Complaint, ¶22). Kenney requested a full defense for the claims asserted against it under the terms of insurance policies issued by Bituminous. (Rec. No. 1, Complaint, ¶23). Bituminous agreed to provide a full defense under a strict reservation of rights. (Rec. No. 1, Complaint, ¶24). However, upon conducting further investigation, Bituminous determined that Kenney was not entitled to indemnification for many of the claims asserted against it under the terms and conditions of the Bituminous insurance policies. (Rec. No. 1, Complaint, ¶25).

---

[1] Division A-1 consisted of the installation of approximately fifteen miles of pipeline extending from a water treatment plant and a secondary water distribution system, including approximately seven miles of large diameter pipe measuring fourteen inches and sixteen inches in diameter. (Rec. No. 1, Complaint, ¶8).

[2] Kenney then entered into a contract with Double D Construction Company to do the excavation and installation of underground pipe and equipment related to Division A-1. (Rec. No. 1, Complaint, ¶10). A certificate of substantial completion for Division A-1 was signed by Kenney on July 7, 2005 and by JCWC on March 28, 2006. (Rec. No. 1, Complaint, ¶11).

As a result, Bituminous seeks declaratory relief from this Court. (Rec. No. 1, Complaint, ¶26). In response, Kenney has filed the instant motion to dismiss [Rec. No. 8], requesting that this Court decline to exercise jurisdiction under the Declaratory Judgment Act.

## II. THE DECLARATORY JUDGMENT ACT

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). District courts have broad discretion "in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995); *Aetna Cas. & Sur. Co. v. Sunshine Corp.*, 74 F.3d 685, 687 (6th Cir. 1996).

The Sixth Circuit has set forth five factors that district courts should consider in determining whether exercising jurisdiction under the Declaratory Judgment Act is appropriate. These factors include:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata;

(4) whether the use of a declaratory remedy would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Aetna*, 74 F.3d at 687 (citation and internal quotations omitted).

In addition, when analyzing the fourth factor, courts should consider three sub-factors. These sub-factors are:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000). The Court will address each of these factors in turn.

**A. Whether the Action will Settle the Controversy or Clarify the Legal Relations at Issue?**

Because these factors are closely related, courts often consider them together. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008); *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 271-72 (6th Cir. 2007). The Sixth Circuit has recently discussed these factors in great detail and recognized that there is a split in authority in this circuit regarding their proper interpretation. *Flowers*, 513 F.3d at 555-58. With regard to the first factor, the question is whether the declaratory action will settle the controversy. One line of cases has required that the action settle the underlying state court controversy, while the other has only required that it settle the controversy between the parties to the declaratory action. *Flowers*, 513 F.3d at 555.

*Flowers* explained that while these diverging lines of cases may be explained by competing policy considerations, they might also be explained by their different factual scenarios. *Id.* at 556. The Court indicated that the line of cases declining to exercise jurisdiction

because the declaratory action could not settle the underlying state court controversy, did so because those cases required district courts to make factual findings that might overlap with those of the state courts.³ *Id.* at 556. However, where these same concerns were not present because the declaratory plaintiff was not a party to the state court action and the scope of insurance coverage nor the obligation to defend were before the state court, a declaratory judgment could resolve the insurance coverage controversy and clarify the legal relations at issue. *Id.*

In the instant case, the declaratory action will not settle the ultimate controversy which is ongoing in the Ohio state courts. Bituminous is not a party to the ongoing state court proceedings. However, it is not clear what factual findings the Court will be required to make in order to resolve this coverage dispute. In state court, the plaintiffs are attempting to establish that various defendants including Kenney breached their contractual duties in the construction of Division A-1 and that these breaches caused their alleged damages. In this declaratory action, Bituminous has contended that there is no coverage because no "property damage" or "occurrence" occurred as defined in the Bituminous policies. In order to make this determination, the Court may have to make factual findings overlapping with those of the Ohio

---

³ For example, in *Bituminous*, the insurance company sought an declaration that it was not obligated to defend or indemnify J&L Lumber Company in a state court action based on a logging accident that injured one of its employees. 373 F.3d at 813. The insurance policy in question had an exclusion for employees, so if Shields was considered an employee at the time of his injury, Bituminous would have had no duty to defend or indemnify J&L. *Id.* However, if Shields was not considered an employee at the time of the accident, then Bituminous would have been obligated to defend and indemnify J&L in the state court action. *Id.* The Court noted that the question of Shield's employment status at the time of his injury was a fact-based and very close question of state law. *Id.* In addition, the employment status issue was already being considered in two independent state court proceedings, creating the risk of inconsistent results. *Id.* at 813-14. Finally, the Court noted that because the state court plaintiff was not made a party to the declaratory action, any judgment would not be binding on him and could not be *res judicata* in the tort action. *Id.* at 814. As a result, the Court found that a declaratory judgment would not resolve the insurance coverage controversy and that the first factor weighed against exercising jurisdiction. *Id.*

state court. Consequently, although the controversy between Bituminous and Kenney might be settled by this action, the risk of overlapping factual findings supports this Court's determination that this factor weighs against exercising jurisdiction.

There is also a split in the Sixth Circuit regarding the proper interpretation of the second factor. One line of cases has required clarification of the legal relations between the parties to the declaratory action, while another has required clarification of the legal relations between the parties to the underlying state court action. *Flowers*, 513 F.3d at 557. *Flowers* indicated that better approach only requires clarification of the legal relations between the parties to the declaratory action. *Id.* While the Court recognizes that this action will not clarify the legal relations of the parties to the state court action, it will clarify the legal relations between Bituminous and Kenney. Consequently, this factor favors exercising jurisdiction.

**B. Whether Federal Jurisdiction is Being used for a Race for Res Judicata?**

This factor is "meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d at 558 (quoting *Amsouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). However, courts have been reluctant to impute an improper motive in the absence of evidence of such a motive in the record. *See Travelers*, 495 F.3d at 272; *Scottsdale Ins. Co. v. Roumph*, 211 F.3d at 968; *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990).

In this case, there is no evidence that Bituminous' declaratory action was filed solely for the purpose of obtaining a more favorable forum. Bituminous is not a party to the state court action and the insurance coverage issue is not before that court. In addition, Bituminous filed

this action after commencement of the state court action which favors giving it the benefit of the doubt. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003). As a result, this factor favors exercising jurisdiction.

**C. Whether this Action will Increase Friction Between State and Federal Courts?**

As indicated above, a district court must consider three sub-factors in deciding whether the declaratory action will increase friction between state and federal courts. *See Bituminous*, 373 F.3d at 814-15. These factors are considered because "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Green*, 825 F.2d at 1067.

The first sub-factor addresses whether a state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d at 560. In insurance coverage actions, such questions can sometimes be resolved as a matter of law when factual findings are not required. *Northland*, 327 F.3d at 454. However, if factual findings are required which might conflict with factual findings by a state court, exercising jurisdiction is inappropriate. *Travelers*, 495 F.3d at 272.

Kenney claims that relevant facts in the state court case include the contractual performance of each defendant, the timing of the performance and the completion of each defendant's performance. Essentially, each defendant in the state court action is attempting to prove that they properly and timely completed their work and did not cause the damages. Bituminous has alleged that Kenney is not entitled to coverage because there was no "property damage" or "occurrence" as defined in the insurance policy. Bituminous argues that no factual findings will be required because the insurance contract can be interpreted as a matter of law.

However, in determining what actually occurred with the work on Division A-1 and whether Kenney is entitled to coverage, the Court will likely have to make factual findings. There is a realistic possibility that these findings might conflict with those of the state court. Based on the parties written submissions, it is still unclear what went wrong with the work on Division A-1. Consequently, the Court finds that this sub-factor weighs against exercising jurisdiction.

The second sub-factor asks which court, federal or state is in a better position to resolve the issues in the declaratory action. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d at 560. States are normally in a better position to resolve insurance issues and novel issues of state law. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d at 560. Here, the Ohio state court would not necessarily be in a better position to interpret this contract under Kentucky law. However, as discussed above the Court may be required to make factual findings which overlap with those being made in the state court. As Kenney has argued, all of the relevant parties and evidence related to these potential overlapping questions of fact are before the Ohio court. Because state courts are ordinarily in a superior position to decide insurance issues and because the Ohio state court already has access to all relevant proof and all parties potentially affected by the coverage dispute are before that Court, this sub-factor weighs against exercising jurisdiction.

The final sub-factor addresses "whether the issues in the federal action implicate important state policies" and are more appropriately considered in state court. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d at 561. The Sixth Circuit has recognized that "issues of insurance contract interpretation are questions of state law with which the...state courts are more familiar and therefore better able to resolve." *Id.* (quoting *Travelers*, 495 F.3d at 273). Furthermore, "the states regulate insurance companies for the protection of their residents, and state courts are best

situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* (quoting *Bituminous*, 373 F. 3d at 815). In this case, the insurance policies were issued to Kenney, a Kentucky corporation and are likely to be interpreted under Kentucky law. The Sixth Circuit has recognized that issues of insurance contract interpretation do not always "implicate such fundamental state policies that the federal courts are unfit to consider them." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d at 561. Because the issues involved do not appear to be novel, the Court finds that this sub-factor favors exercising jurisdiction.

**D. Whether an Alternative Remedy is Available?**

District courts should deny requests for declaratory relief where alternative remedies are available that are better or more effective than the declaratory action. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d at 562. Kenney argues that Bituminous could have sought a declaration of its rights in the Ohio state court which would have been a more effective remedy because state courts are in a better position to resolve insurance coverage issues. Kenney also argues that resolving the insurance coverage issue in state court and will allow the same court to decide coverage issues as is deciding the underlying action.[4]

There is a Sixth Circuit split "whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsel's against the district court exercising jurisdiction." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d at 562. As a result, the "inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal

---

[4] Both parties agree that Kentucky law applies to this dispute. However, Kenney notes that the Ohio state court may choose to apply its own law and not Kentucky law based on a finding that Ohio "has the most significant relationship to the transaction and the parties." *See S & S Chopper Service, Inc. v. Scripter*, 394 N.E.2d 1011, 1012-12 (Ohio App. 1977).

declaratory plaintiff." *Id.* No significant federal interest is triggered by this declaratory action because the Court's jurisdiction is based on diversity, no federal questions are involved and state law will be applied. In addition, both Kentucky and Ohio state courts provide procedures for a declaration of rights. As discussed previously, assuming that Kentucky law will govern, the issues involved do not appear to be novel and this Court is confidant that the Ohio state court will be able to resolve them. In light of the fact that "a superior alternative remedy exists in the form of an indemnity action filed at the conclusion of the underlying state action," the Court finds that this factor weighs against exercising jurisdiction. *Bituminous*, 373 F.3d at 816.

### III. CONCLUSION

The Supreme Court has recognized that "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995). Under the facts of this case, after careful consideration of the five *Grand Trunk* factors, the Court has determined that exercising jurisdiction over the declaratory action is inappropriate.

Accordingly, it is **ORDERED** that:

(1) Defendant Kenney's Motion to Dismiss [Rec. No. 8] is **GRANTED;**

(2) This action is **DISMISSED** and stricken from the Court's active docket.

This 4th day of March, 2010.



Signed By:

*Karen K. Caldwell*

**United States District Judge**